UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANTOS TONY CERVANTES, | No. 2:13-cv-1955-CKD |
| Plaintiff, | |
| v. | ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying applications for Disability Income Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), respectively. For the reasons discussed below, the court will grant plaintiff's motion for summary judgment, deny the Commissioner's cross-motion for summary judgment, and remand this matter under sentence four of 42 U.S.C. § 405(g).

BACKGROUND

Plaintiff, born June 20, 1963, applied on July 26, 2010 for DIB and SSI, alleging disability beginning June 1, 2010. Administrative Transcript ("AT") 223-33. Plaintiff alleged he was unable to work due to degenerative disc disease in his back, high blood pressure, high cholesterol, hepatitis C, bipolar disorder, schizophrenia, personality disorder and arthritis. AT 92, 105, 243.

In a decision dated June 15, 2012, the ALJ determined that plaintiff was not disabled.[1] AT 49. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.
>
> 2. The claimant has not engaged in substantial gainful activity since June 1, 2010, the alleged onset date.
>
> 3. The claimant has the following severe impairments: disorder of the back; hypertension; schizophrenia; and bipolar disorder.
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

   The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

>   5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work . . . specifically as follows: the claimant can lift and/or carry 10 pounds occasionally and less than 10 pounds frequently; he can stand and/or walk for two hours out of an eight-hour workday with regular breaks; he can sit for six hours out of an eight-hour workday with regular breaks; he requires a sit/stand option provided he will not be off task more than 10% of the work period; he can never climb ladders, ropes, or scaffolds; he can occasionally climb ramps and stairs; he can occasionally stoop, crouch, kneel, and crawl; he is limited to jobs that can be performed while using a hand held assistive device required only for uneven terrain or prolonged ambulation; he must avoid all use of hazardous machinery; he must avoid exposure to unprotected heights; he is limited to simple, as defined in the DOT as SVP levels 1 and 2, routine and repetitive tasks; he is limited to low stress work with only occasional decision making and only occasional changes in the work setting with no strict production quotas emphasis on a per shift rather than per hour basis; he can only occasionally interact with the co-workers, supervisors, and the general public.
>
>   6. The claimant is unable to perform any past relevant work.
>
>   7. The claimant was born on June 20, 1963 and was 46 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date.
>
>   8. The claimant has limited education and is able to communicate in English.
>
>   9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.
>
>   10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.
>
>   11. The claimant has not been under a disability, as defined in the Social Security Act, from June 1, 2010, through the date of this decision.

AT 39-48.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ failed to give proper weight to the medical opinions of Dr. Ewing and Dr.

/////

/////

3

Sharma; and (2) the ALJ failed to explain why plaintiff's diagnosis of anti-social personality disorder was not credited.[2]

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226,

---

[2] As discussed below, the ALJ improperly rejected the opinions of Dr. Troy Ewing and Dr. Satish Sharma, requiring remand of this action. Because this issue is dispositive, the court need not reach plaintiff's additional assignment of error. The court notes, however, that the ALJ failed to properly account for plaintiff's diagnosis of anti-social personality disorder. The ALJ did not find plaintiff's anti-social personality disorder to be severe. AT 39. In evaluating plaintiff's reported symptoms and credibility, the ALJ only addressed plaintiff's complaints of paranoia, auditory hallucinations, and depression. AT 45. Although mentioned in evaluating Dr. Ewing's opinion, the ALJ did not explain how plaintiff's social limitations, arising from his anti-social personality disorder, affect plaintiff's ability to function. As plaintiff notes, his diagnosis of anti-social personality disorder dates back to 2008. AT 339-348. On remand, the ALJ shall properly address plaintiff's diagnosis of anti-social personality disorder.

1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

Plaintiff contends the ALJ failed to give proper weight to the opinions of Dr. Troy Ewing and Dr. Satish Sharma. The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester, 81 F.3d at 830. Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence. Id. at 830. "'The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" Magallanes v. Bowen, 881 F.2d 747, 751 (quoting Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986)). "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors[], are correct." Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988). While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (*e.g.*, supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes, 881 F.2d at 751). In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a

1    treating or examining professional.  Lester, 81 F.3d at 831.

2       A.  Dr. Troy Ewing

3       Plaintiff contends that the ALJ failed to articulate specific and legitimate reasons for
4    rejecting Dr. Ewing's opinion regarding plaintiff's ability to handle work-related stress, interact
5    with coworkers, and accept instructions from supervisors.  Dr. Ewing opined that plaintiff is able
6    to perform simple repetitive tasks as well as complex tasks as there are no noted intellectual
7    impairments; has a poor to fair ability to accept instructions from supervisors and interact with
8    coworkers and the public; has a fair ability to maintain regular attendance in the workplace
9    however his mental health symptoms and personality traits may affect this ability; and has a poor
10   to fair ability to handle normal work related stress from a competitive work environment.  AT
11   429.

12      As to plaintiff's mental RFC, the ALJ concluded that plaintiff was limited to simple,
13   routine and repetitive tasks; low stress work requiring occasional decision making and occasional
14   changes in the work setting; no strict production quotas emphasizing a per shift rather than per
15   hour basis; and only occasional interaction with co-workers, supervisors, and the general public.
16   AT 42.  In determining plaintiff's mental RFC, the ALJ gave "significant, but not full weight, to
17   the opinions of psychological consultative examiner, Dr. Ewing, and the State agency mental
18   medical consultants."  AT 46.  The ALJ stated that these opinions were "generally consistent in
19   that they all assess the claimant is able to perform simple repetitive tasks with some difficulties
20   dealing with others and handling stress."  AT 46.  However, the ALJ did not completely adopt
21   any single assessment as the RFC and reasoned that: 1) the restrictions adopted in the RFC are
22   those best supported by the objective evidence; 2) the RFC provides limitations considering
23   plaintiff's allegations of irritability, depression, paranoia, and inability to handle stress; and 3) no
24   medical source statement suggested functional limitations more restrictive than those functional
25   limitations included in the RFC.  AT 46.

26      Despite stating that Dr. Ewing's opinion was generally consistent, reasonable and
27   supported by the record as a whole, the ALJ did not account for Dr. Ewing's opinion regarding
28   plaintiff's poor to fair ability to interact with coworkers and supervisors and his poor to fair

1    ability to handle normal work-related stress.  The ALJ only gave general reasons for discrediting
2    portions of Dr. Ewing's opinion.  AT 46 ("No single assessment has been completed adopted as
3    the residual functional capacity determined herein.").  The ALJ's RFC would find support in the
4    opinion of Dr. Funkenstein, a State agency mental medical consultant.[3]  See AT 442-44  (finding,
5    among other things, plaintiff moderately limited in ability to carry out short, simple or detailed
6    instruction, to work with others and not significantly limited in ability to accept instructions and
7    criticism from supervisors).  However, Dr. Funkenstein did not examine plaintiff and, thus, Dr.
8    Funkenstein's opinion is insufficient to reject Dr. Ewing's opinion.  See Lester, 81 F.3d at 831
9    (opinion of a non-examining professional, without other evidence, is insufficient to reject the
10   opinion of an examining professional).

11          The Commissioner contends that the ALJ's findings were consistent with, and reasonably
12   accommodated, the asserted limitations in Dr. Ewing's opinion.  Dr. Ewing's opinion regarding
13   plaintiff's ability to handle work-related stress and interact with coworkers and supervisors is
14   more restrictive than the limitations identified in the RFC.  The ALJ failed to explain how "low
15   stress work" accommodates plaintiff's poor to fair ability to handle "normal work-related stress."
16   As plaintiff notes, the issue regarding his ability to handle stress relates to the type of stress—
17   work related stress—as opposed to the level of stress—low, medium or high stress.  Similarly, the
18   ALJ failed to explain how occasional interaction with co-workers, supervisors, and the general
19   public accommodates plaintiff's poor to fair ability to interact with co-workers and accept
20   instructions from supervisors.  It is possible that plaintiff is unable to handle any work-related
21   stress and unable to interact with his co-workers and supervisors.  As the Vocational Expert
22   testified, if poor to fair ability to respond to instructions from supervisors meant that only one-
23   third of the time plaintiff would appropriately respond to instructions from supervisors, then
24   plaintiff could not perform any of the jobs the VE identified.[4]  See AT 79.  The ALJ's reasons for

---

[3]    The ALJ did not expressly analyze or address Dr. Funkenstein's opinion except in mentioning the opinion in passing.  As such, it is unclear whether the ALJ even relied on Dr. Funkenstein's opinion in rejecting Dr. Ewing's opinion at all.

[4]    While examining the VE, plaintiff's counsel defined "poor to fair ability" as one third of the time plaintiff could perform a certain task, whether "that would be either one third of the day or one day every three."  AT 79.  The Commissioner takes issue with plaintiff's definition of

1    discrediting Dr. Ewing's opinion regarding plaintiff's ability to handle work-related stress and
2    interact with coworkers and supervisors are neither specific nor legitimate.

3        B.  <u>Dr. Satish Sharma</u>

4        Plaintiff also asserts the ALJ failed to recognize that Dr. Sharma's opinion was more
5    restrictive than the ALJ's RFC assessment, and, thus, the ALJ discredited Dr. Sharma's opinion
6    without comment. In particular, Dr. Sharma opined that, among other things, plaintiff could stand
7    and walk for 4 hours per day with the help of a cane. AT 421, 423. On the contrary, the ALJ
8    concluded that plaintiff only required the help of cane for uneven terrain or prolonged
9    ambulation. AT 42. The ALJ stated that Dr. Sharma's opinion along with the determinations of
10   the State agency physical medical consultants were considered but were not given great weight
11   because they concluded that plaintiff could perform light work as opposed to being limited to
12   sedentary work as the ALJ found. AT 46.

13       Plaintiff asserts that the ALJ was required to give specific and legitimate reasons for why
14   Dr. Sharma's opinion regarding plaintiff's need for an assistive device to balance was discredited.
15   Indeed, the ALJ provided general reasons for giving less weight to Dr. Sharma's opinion as
16   opposed to specific reasons as required under <u>Lester</u>. 81 F.3d at 830. The ALJ reasoned that Dr.
17   Sharma did not review all the medical evidence, including additional evidence only available
18   after the reconsideration determination, and did not adequately consider plaintiff's subjective
19   complaints. AT 46. None of these reasons are sufficient to reject Dr. Sharma's opinion. The
20   ALJ did not explain how the additional medical evidence renders Dr. Sharma's in-person
21   examination less credible. The ALJ also failed to explain how Dr. Sharma's opinion that plaintiff
22   needed an assistive device to balance inadequately considered plaintiff's subjective complaints.
23   The ALJ failed to articulate specific and legitimate reasons that are supported by substantial
24   evidence in assigning Dr. Sharma's opinion less weight. For these reasons, this matter will be
25   remanded so the whole record may be fully and properly addressed by the ALJ in assessing the

---

26/27/28   "poor to fair ability" arguing that "[p]laintiff's desire that his own translation of Dr. Ewing's opinion be used, rather than the ALJ's, is not a proper basis for reversal. However, the ALJ never expressed an interpretation of Dr. Ewing's opinion and what the ALJ thought Dr. Ewing meant by "poor to fair ability."

medical opinions in the record.

CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 16) is granted;

2. The Commissioner's cross-motion for summary judgment (ECF No. 17) is denied; and

3. This matter is remanded for further proceedings consistent with this order.

Dated: September 2, 2014

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

10/4 cervantes.ss